GEORGE E. SUITER, Appellant, v. BOARD OF SUPERVISORS OF SCOTT
COUNTY et al., Appellees.

**HIGHWAYS:** Establishment—Estoppel to Object.  A property owner
may not object to the establishment of a highway through his
orchard when, at a prior time in the proceedings, he has protested
in writing against a proposed change in that location.

*Appeal from Scott District Court.*—A. J. HOUSE, Judge.

MARCH 6, 1923.

REHEARING DENIED JUNE 22, 1923.

APPEAL from a judgment dismissing plaintiff's petition
praying that the defendant board of supervisors be perma-
nently enjoined from locating and opening a public highway
through and across an orchard upon his premises.—*Affirmed.*

*J. P. Pedersen* and *R. G. Smith,* for appellant.

*Lane & Waterman (Joe R. Lane* and *Herbert Sitz)* and
*John J. McSwiggin,* for appellees.

STEVENS, J.—Plaintiff, appellant herein, is the owner of a
tract of land upon which he has for many years cultivated and
maintained an orchard, through which the board of supervisors
of Scott County has located and established a primary road
known as the Davenport-Le Claire-Princeton road.  Appellees,
of course, concede that the consent of appellant was necessary
to the location of the highway through his orchard, and contend
that such consent was obtained.  The county engineer reported
in favor of the location of the highway at the place in con-
troversy.  This report, as we interpret the record, was filed Janu-
ary 16, 1922, following which appraisers were appointed to
assess the damages, and the required notice was given to the
property owners.  Before the expiration of the time fixed by
law for filing objections and claims for damages, appellant pre-
sented a claim, asking damages in the sum of $2,520.  Later, an

additional claim was filed, in which damages in the sum of $5,000 were asked. One and twenty-one hundredths acres of appellant's land will be appropriated for the use of the highway. He was allowed $457.43 by the appraisers. Upon appeal to the district court and a trial to a jury, he was awarded $550. No appeal was taken from the award of the jury, and the time for taking such appeal has long since expired. Appellant also filed written objections in the office of the county auditor to the establishment of the highway through his orchard, calling attention to Section 1527-r4 of the Supplemental Supplement to the Code, 1915, which prohibits the establishment of highways through any orchard or ornamental grounds. The transactions and conduct of appellant relied upon by appellees to establish consent are, in substance, as follows: After stakes designating the location of the proposed highway had been set through appellant's orchard, he was visited by the board of supervisors, where he was at work on a government dam, and an effort was made by them to settle the matter of damages to his premises on account of the location of the highway. This was in December, 1921. Appellant, at the time, made no objection to the location of the road, and the conversation was confined largely to the question of damages. The board offered appellant $1,000. This he did not accept, but told the board to see his brother Charles, who, he claimed, was interested with him, and that whatever he said would be satisfactory. At least one of the members of the board testified that, during the conversation, appellant said that he wanted the road where it was located. This appears to have been the only positive statement made by appellant touching the subject of consent; but the tenor of the conversation, as detailed by the members of the board, conveys the impression that appellant did not object to the road's going through his orchard. The statement above attributed to him was denied, if at all, only by implication, while a witness in his own behalf. Appellant briefly gave his version of the conversation, which does not materially differ from that of the other witnesses, and as a conclusion stated that he "never gave anybody consent to pass through the orchard."

Charles Suiter, when interviewed later by the board, said that $1,000 was not enough, but that they would accept $2,000.

At least one member of the board of supervisors testified that Charles further stated that it would be a crime to locate the road any other place, and that they were not going to change it for a few paltry dollars. On January 3, 1922, a protest against a change in the course of the highway, which would relieve appellant's premises, signed by a large number of citizens, including appellant and his wife, was presented to the board of supervisors. This protest must be construed as at least an implied consent upon the part of appellant. It is in effect much more than that. After the report of the appraisers appointed to assess damages had been filed in the office of the county auditor, the board of supervisors caused a notice withdrawing the previous offer of $1,000 to be served upon appellant. On or about February 11, 1922, appellant and his wife, in a written notice filed in the office of the county auditor, undertook to withdraw their names from the protest previously filed, upon the ground that same had been signed under "a misapprehension and mistake." The board made a record declining to accept appellant's request that his name be withdrawn from the protest.

While the engineer's report had not been filed, the board of supervisors, after the protest, or petition (for it was that in fact), signed by appellant and others had been filed in the office of the county auditor, and before the attempted withdrawal of his signature, purchased right of way for the highway, and let grading and tiling contracts amounting to more than $20,000.

Appellees, in addition to pleading consent, set up the above transactions and conduct of appellant as estopping him from denying that he consented to the location and establishment of the highway through his orchard. We do not deem it necessary to quote the evidence in greater detail. Appellant must, in view of the matters stated above, be held to have given consent that the highway be established where it was proposed to locate it. Consent need not be in writing, but it may be inferred from the owner's acts and conduct. *Stronsky v. Hickman,* 116 Iowa 651; *Dennis v. Independent Sch. Dist.,* 166 Iowa 744.

The only reference to the orchard by appellant in his conversation with the members of the board of supervisors in December at the government dam was that the road would take a row of fruit trees. He offered no objection to the location of

the road because of that fact, and he was assured by the members of the board that compensation would be paid therefor.

The whole conduct of appellant up to the time he filed objections in the auditor's office was consistent with the contention of appellees that he induced the members of the board to believe that he was willing that the road should be opened through his orchard, if it did not amount to express consent. If the testimony of one of appellees' witnesses, that appellant said he wanted the road established where located by the survey, is to be believed, it was the equivalent of express consent. It is not an unreasonable inference to be drawn from the record that the objection filed by appellant and the attempted withdrawal of his signature from the protest or petition presented to the board were designed rather to aid him in securing a more substantial sum as damages than as a genuine attempt to prevent the road from passing through his orchard. The record as a whole satisfies us that appellant gave the required consent, and that, the board having incurred expense in evident reliance thereon, he is precluded from making further objections thereto. The judgment of the court below is—*Affirmed.*

PRESTON, C. J., WEAVER and DE GRAFF, JJ., concur.